IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No.7:16-CV-300-BO

| | | |
|---|---|---|
| CALVIN TYRONE NORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF WHITEVILLE, a Municipality; | ) | |
| WHITEVILLE POLICE DEPARTMENT, | ) | |
| a department under the Municipality of City | ) | |
| of Whiteville; TRACEY CARTER, Police | ) | |
| Officer of Whiteville Police Department | ) | |
| sued in her official & individual capacity; | ) | ORDER |
| STEPHEN aka STEVEN STRICKLAND, | ) | |
| Police Officer of Whiteville Police | ) | |
| Department sued in his official & individual | ) | |
| capacity; JEFFREY ROSIER, Chief Police | ) | |
| at Whiteville Police Department sued in his | ) | |
| official & individual capacity; AUNDRE' | ) | |
| JACKSON, Lieutenant at the Whiteville | ) | |
| Police Department sued in his official & | ) | |
| individual capacity; BOBBY DEAN | ) | |
| KEMP, JR., sued in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

This cause comes before the Court on an amended motion to dismiss by defendants City

of Whiteville, Whiteville Police Department, Tracey Carter, Stephen/Steven Strickland, Jeffrey

Rosier, and Aundre/Andre Jackson (Whiteville defendants). Plaintiff, proceeding in this matter

*pro se*, has responded to the motion, the Whiteville defendants have filed a document in reply,

and the motion is ripe for ruling. For the reasons discussed below, the Whiteville defendants'

motion is granted.

Plaintiff filed this action on August 17, 2016, alleging claims under 42 U.S.C. § 1983 for violation of his Fourth, Fifth, and Sixth Amendment rights.[1]  Plaintiff also alleges a claim for intentional discrimination under Title VI of the Civil Rights Act of 1964 and AOJ Program Statute.  42 U.S.C. § 2000d.   Plaintiff further alleges claims under state law for gross negligence, invasion of privacy intrusion, and denying access to public records.  On September 27, 2016, plaintiff filed an amended complaint alleging the same causes of action.  Plaintiff seeks damages in excess of three million dollars for injuries caused by defendants.

In support of his claims, plaintiff alleges the following facts.  On July 24, 2016, at approximately 4:09 p.m., defendants Strickland and Kemp entered the curtilage immediately surrounding plaintiff's home located in Whiteville, North Carolina without permission, consent, a warrant, summons, or citation.  Plaintiff alleges that Kemp was the driver of a white model New Yorker car which unlawfully trespassed onto plaintiff's private property after Officer Strickland conducted what appeared to be a traffic stop of Kemp's car.  Plaintiff alleges that court records do not reveal that Kemp was issued a warning or citation to demonstrate reasonable suspicion or probable cause for initiating the stop.  Defendant Officer Carter subsequently arrived and also trespassed on plaintiff's property.  When plaintiff arrived home, a white car without vehicle tags had been abandoned in his driveway area.  Plaintiff contacted the local magistrate and 911 dispatch to inform them about the abandoned vehicle.  Defendant Lieutenant Jackson phoned plaintiff to inform him that the Whiteville Police Department had relied on what

---

[1] This is the fifth case filed by plaintiff in this Court against the Town of Whiteville and its officials or representatives.  *See Norton v.* Rosier, 7:14-CV-260-BO; *Norton v. Tabron*, 7:16-CV-21-BO; *Norton v. Tabron*,7:16-CV-56-BO; and *Norton v. City of Whiteville*, 7:16-CV-133-BO.

Kemp told them regarding leaving the vehicle in the yard. The vehicle was towed away at approximately 8:45 p.m. that evening. Plaintiff's home surveillance video recorded the incident.

On July 25, 2016, plaintiff arrived at the Whiteville City Administration facility at approximately 9:30 a.m. requesting public records of the official police report at plaintiff's address as well as the Whiteville Police Department's standard operating procedure manual. Plaintiff was sent to the Whiteville Police Department to make his request. Plaintiff did so and spoke again to Lieutenant Jackson who denied plaintiff access to the records. The same day, plaintiff spoke to attorney Carlton Williamson at his office making the same request. On July 26, 2016, Williamson stated that he told Chief Jeffrey Rosier to copy the standard operating procedure manual for plaintiff and to send plaintiff a copy of the police report. As of August 12, 2016, plaintiff had been denied his public records request. Plaintiff alleges that the police report which was released to him by defendant Kemp shows that the investigation was closed and cleared by arrest on July 24, 2016. Plaintiff further alleges that the police report "left out the back description and it clearly defames plaintiff's character and his private home location as being the subject matter of a 'drug scenery' ...."

DISCUSSION

The Whiteville defendants have moved to dismiss plaintiff's amended complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] As the Whiteville defendants have answered plaintiff's amended complaint, [DE 29], their motion to dismiss is more properly considered a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The governing standards of a motion under 12(b)(6) and 12(c) are the same. *Id.* A Rule 12(b)(6) motion tests the legal

_____

[2] Clerk's default pursuant to Fed. R. Civ. P. 55 has been entered against defendant Kemp. [DE 25].

sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In ruling on a Rule 12(c) motion, the factual allegations contained in an answer "are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." *Pledger v. N. Carolina Dep't of Health & Human Servs., Dorothea Dix Hosp.*, 7 F. Supp. 2d 705, 707 (E.D.N.C. 1998).

I.    *Fourth Amendment claim*

Plaintiff's first claim for relief alleges that defendants Kemp, Strickland, and Tracey's entry onto plaintiff's private property constituted an unlawful search as plaintiff maintained an expectation of privacy in the curtilage surrounding his home. Plaintiff further alleges that the City of Whiteville, the Whiteville Police Department, Rosier, and Jackson are also liable for the Fourth Amendment violation based on the failure of official policy to demonstrate how to properly enter onto another person's private property. In support of his Fourth Amendment claim, plaintiff alleges that Officer Strickland initiated a traffic stop of Kemp's vehicle and that Kemp pulled his vehicle onto plaintiff's private property. Plaintiff alleges that Officers Strickland and Carter trespassed on his property as they conducted the traffic stop, and notes that Kemp did not consent to the search of his vehicle. Plaintiff further alleges that Officers Carter and Strickland unreasonably searched around plaintiff's vehicles located in the curtilage of his home. Officer Strickland has admitted that at times during the traffic stop he was in the vicinity of other vehicles parked or located on plaintiff's property. [DE 29 ¶ 25].

4

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. Amend. IV. Its protection against unreasonable government intrusion extends to "homes and the land immediately surrounding and associated with homes, known as curtilage." *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 192 (4th Cir. 2015) (internal quotation and citation omitted). Although plaintiff claims that the officers trespassed the curtilage of his home, mere trespass by a police officer is insufficient to implicate the protections of the Fourth Amendment; rather, a trespass must be accompanied by "an attempt to find something or to obtain information" to constitute a search under the Fourth Amendment. *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012). The only thing or information which plaintiff sufficiently alleges that the officers sought was related to the traffic stop and search of Kemp's person and vehicle. Plaintiff has not alleged that he had any property interest in Kemp's vehicle and does not have standing to challenge the stop or search of Kemp's vehicle or person. *See Rakas v. Illinois*, 439 U.S. 128, 140 (1978) (standing to challenge a search under the Fourth Amendment depends on "whether the disputed search and seizure has infringed an interest of the [challenger] which the Fourth Amendment was designed to protect."); *Alderman v. United States*, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted"); *see also Eiland v. Jackson*, 34 F. App'x 40, 42 (3d Cir. 2002) ("To have standing to bring a Section 1983 claim alleging the violation of his property rights under the Fourth Amendment, [plaintiff] must: (1) assert his own property rights, and (2) allege an injury in fact."). Further, "the officers in this case had a legitimate reason for entering [plaintiff's] property unconnected with a search of such premise", namely, to conduct a traffic stop of Kemp's vehicle. *Alvarez v. Montgomery Cty.*, 147 F.3d 354, 358 (4th Cir. 1998) (internal quotations omitted) (citing *United States v. Bradshaw*, 490 F.2d 1097, 1100 (4th Cir. 1974)).

5

Finally, while it is axiomatic that a person's reasonable expectation of privacy in their home extends to the curtilage, *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013), and that the curtilage is therefore entitled to the same level of Fourth Amendment protection as the home, *Rogers v. Pendleton*, 249 F.3d 279, 287 (4th Cir. 2001), plaintiff's video depicting his front yard and the police intrusion plainly supports that the area at issue was not the curtilage of plaintiff's home.[3] Determining whether an area constitutes the curtilage of a home requires consideration of four factors: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States v. Dunn*, 480 U.S. 294, 301 (1987).

The video footage depicts Kemp's vehicle pulling a few feet into what appears to be plaintiff's driveway and Officer Strickland's patrol vehicle stopping a few feet behind Kemp, with the front tires and hood turned into plaintiff's driveway. The back of the patrol vehicle appears to remain in the public roadway. There is no fence surrounding this area and no steps have been taken to restrict this area from the view of neighbors or people passing by. Neither officer approaches plaintiff's home or side or backyard and both remain in or around the driveway and near the road. The mere posting of "no trespassing" signs, as plaintiff has alleged are present, is insufficient alone to implicate heightened Fourth Amendment protections. *See Oliver v. United States*, 466 U.S. 170, 180 (1984). Based on the foregoing, the area where the

---

[3] As plaintiff has relied on the video evidence in his amended complaint and has provided a copy for the Court to view, the Court may consider the video without converting defendants' motion to one for summary judgment pursuant to Fed. R. Civ. P. 56. *See Norfolk Fed. of Business Dist. v. City of Norfolk*, 103 F.3d 119 (4th Cir. 1996) (unpublished table decision) ("A court may consider matters of public record, items appearing in the record of the case, as well as exhibits attached to the complaint" on a 12(b)(6) motion).

stop of Kemp's vehicle occurred is not within the curtilage of plaintiff's home, and plaintiff did not have a legitimate expectation of privacy therein. Further, while the video depicts several other vehicles, presumably belonging to plaintiff, parked in the yard, at no time does either officer appear to look into or under plaintiff's vehicles.[4] *See Pena v. Porter*, 316 Fed. App'x 303, 313 (4th Cir. 2009) ("A police officer may enter the curtilage of a home for certain purposes unconnected with a search, but if police conduct thereafter exceeds any legitimate reason unconnected with a search of the curtilage justifying the officer's presence, a Fourth Amendment violation has occurred.").

At bottom, plaintiff's allegations which he contends support his Fourth Amendment claim concern the search and seizure of Kemp and Kemp's vehicle as well as an alleged trespass committed by police officers when they conducted the stop on plaintiff's property. These allegations fail to state a plausible claim for violation of plaintiff's Fourth Amendment rights. Because plaintiff has failed to sufficiently allege that Officers Strickland and Carter violated his Fourth Amendment rights, he cannot state a claim that the violation was as a result of a policy, practice, or custom of the Whiteville Police Department and his Fourth Amendment claim is properly dismissed.

II.    *Fifth Amendment claim*

Plaintiff has also failed to state a plausible claim that his Fifth Amendment rights were violated. Plaintiff alleges that his Fifth Amendment due process rights were violated when the City of Whiteville, Whiteville Police Department, defendant Chief Rosier, and defendant Lieutenant Jackson violated N.C. Gen. Stat. § 160A-168 and failed to give plaintiff a copy of the

---

[4] Plaintiff has further failed to sufficiently allege that any seizure of his property occurred due to the presence of the police officers or Kemp's car as he has not identified a meaningful interference with his possessory interests in his property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

Whiteville Police Department standard operating procedure and the police report of the Kemp arrest.

Plaintiff has failed to state a plausible due process claim.[5] The due process clause of the Fourteenth Amendment provides, *inter alia*, that no state shall deprive any person of life, liberty, or property without due process of law. U.S. Const. Amend. XIV. However, "where a deprivation of property is the result of a state employee's random and unauthorized act, the Constitution requires only adequate postdeprivation tort remedies, and not a predeprivation hearing." *Bogart v. Chapell*, 396 F.3d 548, 556 (4th Cir. 2005); *see also Hudson v. Palmer*, 468 U.S. 517, 518 (1984) ("when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are 'impracticable' since the state cannot know when such deprivations will occur").

Plaintiff's allegation that the individual defendants withheld information to which he is entitled under the public records laws of North Carolina qualifies as random, unauthorized conduct of a state employee. As provided in in the statute relied upon by plaintiff, which concerns public employee personnel files, any person who is denied access to this information may apply to the state courts for an order compelling disclosure. *See also* N.C. Gen. Stat. § 132-9 (persons denied access to public records may seek an order compelling disclosure from the state courts). Plaintiff has made no allegation or argument that the state postdeprivation remedies are inadequate, and his due process claim is properly dismissed. *See Doe v. Montgomery Cty., Maryland*, 47 Fed. App'x 260, 261 (4th Cir. 2002) (dismissal of due process claim appropriate where claim based on denial of access to public records and state law sets forth procedures for challenging denial).

---

[5] The Court construes plaintiff's due process claim as one brought under the Fourteenth rather than the Fifth Amendment.

III.     *Sixth Amendment claim*

Plaintiff alleges his Sixth Amendment rights were violated when he was denied the right to face his accusers.  The Confrontation Clause of the Sixth Amendment applies only to criminal proceedings.  U.S. Const. Amend. VI; *see also Turner v. Rogers*, 564 U.S. 431, 441 (2011) (Sixth Amendment not implicated in civil proceedings).  Plaintiff has not alleged that he is the subject of any criminal proceedings related to the incidents and actions complained of in his amended complaint.  He cannot therefore state a plausible claim for relief under the Confrontation Clause.

IV.     *Title VI of the Civil Rights Act of 1964*

Plaintiff's complaint raises a claim for intentional discrimination under Title VI of the Civil Rights Act of 1964 and AOJ Program Statute.  42 U.S.C. § 2000d.  Plaintiff alleges that the facts as pled show that he was entitled to monetary damages from the Whiteville defendants for their specific instance as well as patterns or practices of discriminatory misconduct, treating plaintiff differently because of his race, color, national origin, sex, or religion.  Plaintiff alleges that the Whiteville defendants are in violation of agency regulations for use of a neutral procedure which has disparate impact of individuals of a particular race, color, or national origin, and that Officers Carter and Strickland, Lieutenant Jackson, and Chief Rosier treat similarly situated persons differently from plaintiff because of their race, color, or national origin.  Plaintiff seeks an order directing the Whiteville defendants to change their policies and procedures or face removal of financial assistance from the Department of Justice.

Title VI provides that

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

9

*Id.* "To establish standing under Title VI, the plaintiff must be the intended beneficiary of the federal spending program." *Brown-Dickerson v. City of Philadelphia*, No. CV 15-4940, 2016 WL 1623438, at *8 (E.D. Pa. Apr. 25, 2016) (citing *NAACP v. Medical Center, Inc.*, 599 F.2d 1247, 1252 (3d Cir. 1979)). Here, plaintiff appears to contend that as a person who comes into contact with the Whiteville Police Department, which allegedly receives federal funding, plaintiff is an intended beneficiary of the funding. "Title VI does not contemplate such an attenuated relationship between federal funding and plaintiff." *Id.* Plaintiff has further failed to provide any factual allegations that the Whiteville Police Department or City of Whiteville receives federal funding or how that funding is used in a program of which plaintiff is an intended beneficiary. *Id.* This claim is therefore properly dismissed.

V.       *State law claims*

As the federal claims which give rise to the Court's jurisdiction over the amended complaint are properly dismissed, the Court declines to exercise jurisdiction over plaintiff's state law claims for gross negligence, invasion of privacy intrusion, and denying access to public records. 28 U.S.C. § 1367(c)(3).

CONCLUSION

For the foregoing reasons, the Whiteville defendants' motion to dismiss [DE 30] is GRANTED and the claims against the Whiteville defendants are DISMISSED. As to the claims which remain against defendant Kemp, although clerk's default was entered against defendant Kemp on October 21, 2016, the Court finds that it lacks subject matter jurisdiction over plaintiff's claims against Kemp. As to the Constitutional claims, there has been no allegation and it does not appear on the face of the amended complaint that Kemp is a state actor, and therefore Kemp could not be liable for any alleged violation of plaintiff's Fourth, Fifth, or Sixth

10

Amendment rights. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 181– 82 (4th Cir. 2009) ("merely private conduct, no matter how discriminatory or wrongful, fails to qualify as state action.") (internal quotation marks and citation omitted). It further appears from the face of plaintiff's amended complaint and the affidavit of service filed as to Kemp that Kemp is a citizen and resident of North Carolina. [DE 22 ¶¶ 1, 11]; [DE 16]. Accordingly, the Court lacks diversity jurisdiction over plaintiff's state law claims against Kemp. 28 U.S.C. § 1332; *see also Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (burden is on plaintiff to show that subject matter jurisdiction exists).

Because it has been determined that the Court lacks subject matter jurisdiction over plaintiff's claims against defendant Kemp, the Rule 55(a) default entered against Kemp on October 21, 2016, [DE 25] is hereby SET ASIDE pursuant to Fed. R. Civ. P. 55(c). *See, e.g.,* 10A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2682 (4th ed.) (court must have subject matter jurisdiction prior to entry of default). Plaintiff's claims against Kemp are DISMISSED. *See* Fed. R. Civ. P. 12(h)(3)(court must dismiss action when it determines that it lacks subject matter jurisdiction).

As no claims remain for adjudication, the clerk is DIRECTED to enter judgment and close this case. The clerk is further DIRECTED to serve a copy of this order on defendant Kemp at the address provided by plaintiff.

SO ORDERED, this ___ day of March, 2017.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

11